# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-1388V

|  |  |
|---|---|
| DEBORAH CARLISLE,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: September 30, 2025 |

*Nathan Joseph Marchese, Siri & Glimstad, LLP, Los Angeles, CA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FACT RULING DISMISSING TABLE CLAIM[1]

On September 27, 2022, Deborah Carlisle filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") – a Table injury – as a result of an influenza ("flu") vaccine administered to her on October 8, 2019.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find it more likely than not that the onset of Petitioner's injury did not occur within 48 hours of vaccination. Petitioner's Table claim is

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner alternatively alleges that her subject flu vaccination was the cause-in-fact of her SIRVA and/or significantly aggravated a condition. Pet. at 1.

therefore **DISMISSED** (although the matter may remain viable as a causation-in-fact claim).

## I.    Relevant Procedural History

Following a medical review of the instant claim, Respondent determined this matter was not appropriate for compensation. ECF No. 33. Respondent thereafter filed his Rule 4(c) Report defending this case in February 2024, arguing that the filed record does not support a showing of 48-hour onset. ECF No. 37 at 8-10 (internal citations omitted). I thereafter issued an Order to Show Cause, highlighting the specific deficiencies in the record related to Petitioner's ability to establish Table-consistent onset – among other things.[4] ECF No. 38.

In reaction (and following one extension of time (ECF No. 39)), Petitioner submitted three supplemental affidavits – one authored by her husband, one by her brother, and the other from Petitioner herself. ECF No. 40. She also submitted a status report addressing the record and asserting that her newly-filed evidence corroborates the conclusion that the onset of her symptoms began the same day as vaccination. ECF No. 42 at 2. Respondent nevertheless argued Petitioner's witness affidavits, drafted five years post vaccination, do not provide support for 48-hour onset and he thus expressed his intention to continue defending this case. ECF No. 43. This matter is now ripe for consideration.

## II.    Relevant Medical Evidence

I have reviewed all of the medical records and evidence filed to date. Only such information related to onset will be discussed herein, though other facts may be included as necessary.

At age 64, Petitioner received the flu vaccine alleged as causal on October 8, 2019. Ex. 7 at 2-4. Six days post-vaccination, on October 14, 2019, Petitioner had a follow-up visit with her cardiologist for her pre-existing high blood pressure and cholesterol. Ex. 8 at 35. Petitioner did not reference left shoulder complaints during this visit. However, she stated that she had been using a blood pressure cuff to monitor her blood pressure, and she was "starting to run again, typically between 2 and 4 miles," two times per week. *Id.*

---

[4] While not the subject of my Order to Show Cause, other deficiencies in the record raised by Respondent (i.e., situs, non-covered vaccination, and severity) were also addressed in the Order. I explained based on the submitted evidence that, while not a fact finding *per se*, these objections would be less likely to pose an obstacle to this claim's success if they continued to be contested issues going forward. *See generally* ECF No. 38 at 3-4.

On November 7, 2019 (now approximately one month post vaccination), Petitioner sought care with an orthopedist with a chief complaint of left shoulder pain. Ex. 3 at 37. Petitioner reported that the "symptoms ha[d] been present for 2 weeks." *Id.* But she linked the symptoms to the fact that "4 weeks ago [she] received a flu shot," although she did not also say the pain *began at that time. Id.* Petitioner noted that her pain caused her to wake from sleep; and she described symptoms of aching, burning, stiffness, clicking, popping, weakness, and an inability to reach overhead. *Id.* Following a physical examination of the left shoulder (revealing tenderness to palpation, mild lateral swelling, mild range of motion deficits, and impingement signs), the orthopedist assessed Petitioner with left shoulder "bursopathies" and "adverse effect of other viral vaccines." *Id.* at 38-39. Petitioner received a steroid injection in the left shoulder. *Id.* at 39.

Although Petitioner attended various visits during much of 2020, she did not refer to the onset of her left shoulder pain during any of these appointments. *See,* e.g., Ex. 3 at 18 (a January 3, 2020 visit for a glenohumeral injection); Ex. 3 at 40-41 (Petitioner's March 10, 2020 orthopedic follow-up visit); Ex. 5 at 79-81 (Petitioner's April 8, 2020 primary care provider ("PCP") telemedicine visit for COVID-19-related anxiety); Ex. 8 at 34 (an August 18, 2020 call to her PCP asking whether "she [could] recive [sic] the flu shot in her leg because . . . it ruins her arm by puncturing the bursa."); Ex. 4 at 2 (Petitioner's October 6, 2020 gynecology visit denying shoulder pain).

Approximately one year post-vaccination, on October 12, 2020, Petitioner opted to receive a repeat vaccination in her right dorsogluteal area. Ex. 5 at 38. In support of her request to receive the vaccination in this alternate location and when asked if she has had a reaction to a past vaccination, Petitioner wrote that she had "[illegible] bursitis left arm after flu shot." *Id.* at 57. She later received the COVID-19 vaccinations in her left deltoid in February and March 2021. *See id.* at 29-30.

During a July 8, 2021 orthopedic follow-up visit Petitioner complained of left shoulder and bilateral knee pain. Ex. 9 at 120. She noted she "developed recurrent pain after a flu vaccine." *Id.* at 121. She also noted the "date [the] pain first started" as "07/01/18" – thus *pre vaccination. Id.* at 122. No other medical records related to the onset of Petitioner's left shoulder symptoms have been filed.

## III.    Affidavit Evidence

In her original affidavit (drafted in October 2022, before issues related to onset were raised), Petitioner attests that on October 9, 2019, the morning following her receipt of the subject vaccination, she "woke up with pain in [her] left shoulder and arm." Ex. 2 ¶ 4. She assumed the pain was normal so waited a couple of weeks before seeking care. *Id.* ¶ 5.

In her supplemental affidavit – drafted in response to my Order to Show Cause (outlining the critical deficiencies in the record related to onset) – Petitioner attests she had "some pain immediately after receiving the vaccine that began about an hour later[.]" Ex. 14 ¶ 8. And by "[t]he next day, [her] shoulder was hot to the touch. It stayed that way for a long time[.]" *Id.* ¶ 9.

Petitioner also addressed her November 7, 2019 medical record (describing the onset of pain two weeks post vaccination) and stated that "[w]hen [she] was filling the form out, [she] was in extreme pain, and [she] was exhausted from not being able to sleep." Ex. 14 ¶ 12. As a result of the pain and being tired, she "made a mistake in how [she] filled out the form[.]" *Id.* ¶ 13. Petitioner attests that she was surprised she made an error, but she was exhausted and distracted from a month of pain and sleep deprivation as a result of her injury. *Id.* ¶ 14.

Petitioner's husband also drafted an affidavit in October 2024, following my Order to Show Cause. Ex. 15. Petitioner's husband attests that when Petitioner came home from getting her flu shot, "she said her arm was bothering her." *Id.* ¶ 4. Within "the first night or two, [Petitioner] was up on and off all night due to her pain." *Id.* ¶ 6. As a result, Petitioner's husband was also "up all night with [Petitioner]." *Id.* ¶ 7.

Finally, Petitioner's brother submitted an affidavit in response to my Order to Show Cause. Ex. 16. He attests that on "October 9th [sic] 2019, [Petitioner] called [their] parents concerning a pain in her arm." *Id.* at 1. He emphasizes that "this was the very next day after getting her flu shot." *Id.* No other affidavit evidence regarding the onset of Petitioner's pain has been submitted.

## IV.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests *all* of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.    Onset Findings of Fact

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has failed to establish one QAI requirement for a Table SIRVA - onset. As a result, her Table claim cannot succeed.

6

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that Petitioner's own contemporaneous statements to her treating orthopedist place onset outside the Table's two-day window, and that the only statements that support Table onset are those made in her affidavit, drafted over three years post vaccination. Respondent's Report at 9 (internal citations omitted). He also notes that during Petitioner's intervening cardiology appointment (one week post vaccination) she endorsed using an at-home blood pressure cuff and running – activities which both require use of the shoulder. *Id.*

The specific issue of determining the onset of symptoms often arises in SIRVA cases. Important to that point, the Vaccine Act instructs that a special master may find the time period for the first symptom or manifestation of onset required for a Table Injury is satisfied "even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such a period." Section 13(b)(2). However, consistent with Petitioner's burden of proof overall, that finding must be supported by preponderant evidence. *Id*.

Here, despite Petitioner's and her family's affidavit contentions, Petitioner's medical records do not provide support for onset occurring within 48 hours of vaccination – and the limited record in this case bearing on onset creates hurdles for finding this Table requirement met. In particular, during Petitioner's first post-vaccination visit for left shoulder pain (on November 7, 2019 – thus one month post vaccination), Petitioner identified an onset of only two weeks before – in contrast to her statement that she had received a vaccine *four* weeks before. Ex. 3 at 37. This entry thus does not provide any support for an onset of shoulder pain occurring within 48-hours of the subject vaccination, and actually weighs against such a finding, since Petitioner provided different dates for onset versus vaccination.

Relatedly, Petitioner's explanation in her October 2024 affidavit – drafted in response to my Order to Show Cause – that her report of two weeks of pain was "an error" while filling out the form on November 7, 2019, because she was tired from her pain is not sufficient to overcome her statements to her treater made closer in time to vaccination. Ex. 14 ¶¶ 12-14. Indeed, Petitioner was explicit in her November 7th report of pain present for two weeks. Ex. 3 at 37. It is unlikely Petitioner would refer both to her subject vaccination and the onset of her pain, but not link them as being simultaneous – or at least close-in-time. Instead, Petitioner attempted to correct this "error" only after such notations were discussed in detail in my Order to Show Cause. Her statements made for

7

purposes of litigation (Ex. 14) thus cannot outweigh the contemporaneous medical records in this case.

Just as problematic, the November 7th entry is the *only* record component that describes onset with any temporal particularity. The remainder of Petitioner's medical record entries regarding the onset of her shoulder symptoms were made *nearly a year later or more*, and only vaguely reference pain beginning "after" a flu shot – not even attributable to a flu shot in a specific month, let alone the October 8, 2019 flu vaccine. *See,* e.g., Ex. 5 at 57 (an October 12, 2020 "influenza vaccination form" filled out by Petitioner in pursuit of her receipt of a repeat vaccination and self-reporting "bursitis left arm after flu shot"); Ex. 9 at 121 (a July 8, 2021 orthopedic visit noting "recurrent [left shoulder pain] after a flu vaccine").

Thus, given the failure to describe onset as occurring close-in-time or since an October 2019 vaccination, these entries are not enough to tip the scales in Petitioner's favor regarding onset – especially when weighed against her earlier reports of two-week post-vaccination onset. *See,* e.g., *Callies v. Sec'y of Health & Hum. Servs.,* No. 22-301V, 2024 WL 5408181, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 19, 2024) (finding a petitioner satisfied the Table onset requirement where, despite a delay in seeking care, she related the onset of her pain to the subject vaccination at her first visit for shoulder complaints and provided a general timeframe of onset "since" her receipt of the vaccine, including providing the correct month and year corresponding to the vaccine in question).

While Petitioner offered her own affidavits to overcome the deficiencies in the record regarding onset, such filings deserve less weight than the contemporaneous medical records. Not only were Petitioner's affidavits drafted over three and five years post vaccination, respectively, and in pursuit of litigation, but Petitioner's statements describing immediate onset directly contrast with the medical records. *Compare* Exs. 2, 14 (describing immediate onset upon her receipt of the flu vaccination), *with* Ex. 3 at 37 (Petitioner's report on November 7, 2019, that she had shoulder pain for the last two weeks). Finally, as with Petitioner's affidavits, I cannot find Petitioner's husband's or brother's affidavits (describing immediate or one-day post-vaccination onset) overcome the significant weight of the filed medical records in this case, as they were drafted in *direct* response to my Order to Show Cause. *See generally* Exs. 15-16. I thus do not find them sufficient to carry Petitioner's burden for a showing of Table onset here.

In light of the above, there is not preponderant evidence that Petitioner experienced left shoulder pain within 48 hours of her October 8, 2019 vaccination.

8

## Conclusion

At bottom, it is the overall mix of evidence herein that causes me to find Petitioner's Table claim cannot be preponderantly established. Petitioner has not provided preponderant evidence that the onset of her shoulder pain was within 48 hours of the subject vaccination. Nevertheless, a non-Table claim *could* be viable,[6] and I therefore do not dismiss the case in its entirety at this time. I urge the parties to make one final brief attempt at settlement, since the case will otherwise be transferred out of SPU so that Petitioner can attempt to establish a causation-in-fact claim – likely requiring the retention of experts to amplify Petitioner's claim.

Accordingly, Petitioner's Table SIRVA claim is **DISMISSED.** Petitioner shall file a joint status report indicating that she has provided Respondent with a settlement demand for her off-Table claim (and one that takes into account litigative risk in attempting to prove a non-Table SIRVA that did not begin within two days of the subject vaccination), and the parties' efforts towards informal resolution, **by no later than Friday, November 14, 2025.** If the parties do not report progress in their efforts soon thereafter, the matter will be transferred out of SPU.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] *See supra,* note 4 (reiterating my previous discussion that the remaining objections to compensation raised by Respondent in this case are less likely to pose obstacles to compensation going forward).

9